## CONFIDENTIAL SETTLEMENT AGREEMENT

**Printing & Imaging Association of Georgia, Inc. ("PIAG")** and **Earnestine Murphy**, her heirs, executors, administrators, successors, and assigns (collectively referred to as "Murphy" and, with PIAG, as the "Parties"), hereby enter into this Confidential Settlement Agreement (the "Agreement").

WHEREAS, PIAG employed Murphy until November 30, 2013; and

WHEREAS, Murphy filed a lawsuit against PIAG in the United States District Court for the Northern District of Georgia, which lawsuit is styled *Earnestine Murphy v. Printing & Imaging Association of Georgia, Inc.*, Civil Action No.: 1:14-CV-01003-MHC (the "Lawsuit"); and

WHEREAS, an agreement has been reached between PIAG and Murphy regarding all of the allegations set forth in the Lawsuit and any and all claims and disputes by and between them; and

NOW THEREFORE, in consideration of the mutual promises and covenants set forth herein, the receipt and sufficiency of which are hereby acknowledged, PIAG and Murphy agree as follows:

1. **Consideration.** In consideration for signing this Agreement, and complying with its terms, PIAG agrees to pay to Murphy a total sum of Forty Five Thousand Dollars ($45,000.00), payable as follows:

   a. Within fourteen (14) business days of the Northern District of Georgia's approval of the Parties' settlement, PIAG shall pay Murphy the lump sum of Thirteen Thousand, Two Hundred, Eighty One Dollars and Seventy Five Cents ($13,281.75) as wage income, reduced by all applicable withholding taxes, which amount shall be reported on an IRS Form W-2;

   b. Within fourteen (14) business days of the Northern District of Georgia's approval of the Parties' settlement, PIAG shall pay Murphy a lump sum of Thirteen Thousand, Two Hundred, Eighty One Dollars and Zero Cents ($13,281.00) as non-wage income, which amount shall be reported on an IRS Form 1099-MISC to be issued to Murphy; and

   c. Within fourteen (14) business days of the Northern District of Georgia's approval of the Parties' settlement, PIAG shall pay Pankey & Horlock, LLC, counsel for Murphy, a lump sum of Eighteen Thousand, Four Hundred, Thirty Seven Dollars and Twenty Five Cents ($18,437.25), which amount represents attorneys' fees and shall be reported on separate IRS Forms 1099-MISC issued to Murphy and Pankey & Horlock, LLC.

2. **No Consideration Absent Execution of this Agreement.** Murphy understands and agrees that she would not receive the monies and/or benefits specified in paragraph "1" above, except for her execution of this Agreement and the fulfillment of the promises contained herein.

3. **Tax Indemnification.** Murphy shall be solely responsible for and will pay any and all taxes that may be owed by Murphy which do or may arise as a result of the execution or performance of the terms of this Agreement, regardless of the nature of such tax obligation or consequence. Murphy agrees to indemnify and hold PIAG harmless from any claim made by any entity relating to any tax obligation that Murphy incurs from the execution or performance of this Agreement.

Murphy further acknowledges that she has not relied upon the advice of PIAG concerning the taxability of the amounts paid under this Agreement and that she is relying solely on her own legal and/or tax advisors. Murphy agrees that she will be solely responsible for any taxes that may be owed by her to federal, state and/or local authorities, including any interest or penalties, and will indemnify and hold PIAG harmless for any claims or actions that may arise from any taxes due or owed by Murphy on any monies paid pursuant to this Agreement.

4. **General Release of Claims.** Murphy knowingly and voluntarily releases and forever discharges PIAG, its parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which Murphy has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of:

- **Title VII of the Civil Rights Act of 1964;**
- **Sections 1981 through 1988 of Title 42 of the United States Code;**
- **The Employee Retirement Income Security Act of 1974 ("ERISA");**
- **The Immigration Reform and Control Act;**
- **The Americans with Disabilities Act of 1990;**
- **The Age Discrimination in Employment Act of 1967 ("ADEA");**
- **The Worker Adjustment and Retraining Notification Act;**
- **The Fair Credit Reporting Act;**
- **The Family and Medical Leave Act;**
- **The Equal Pay Act;**
- **The Genetic Information Nondiscrimination Act of 2008;**
- **The Fair Labor Standards Act;**
- **The Georgia Equal Pay Act, O.C.G.A. § 34-5-1,** *et seq.*;
- **The Georgia Age Discrimination in Employment Act, O.C.G.A. § 34-1-2,** *et seq.*;

- The Georgia AIDS Confidentiality Act, O.C.G.A. § 24-9-47;
- The Georgia Equal Employment for Persons with Disabilities Code,
- O.C.G.A. § 34-6-1, *et seq.*;
- O.C.G.A. § 34-7-20;
- The Georgia Wage Payment and Work Hour Laws;
- any other federal, state or local law; and
- any basis for costs, fees, or other expenses, including attorneys' fees.

If any claim is not subject to release, to the extent permitted by law, Murphy waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective, or multi-party action or proceeding based on such a claim in which PIAG or any other Releasee identified in this Agreement is a party.

5. **Acknowledgments and Affirmations.**

Murphy affirms that she has been paid and/or has received all compensation, wages, bonuses, commissions, and/or benefits which are due and payable as of the date of her execution of this Agreement. Murphy affirms that she has been granted any leave to which she was entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws.

Murphy further affirms she has no known workplace injuries or occupational diseases.

Murphy also affirms that she has not divulged any proprietary or confidential information of PIAG and will continue to maintain the confidentiality of such information consistent with PIAG's policies and/or common law.

Murphy affirms that she has returned all of PIAG's property, documents, and/or any confidential information in her possession or control. Murphy also affirms that she is in possession of all of her property that she had at PIAG's premises and that PIAG is not in possession of any of her property.

6. **No Re-Employment.** Murphy acknowledges that because of circumstances unique to her, including but not limited to irreconcilable differences with PIAG, her employment with PIAG is irrevocably and permanently terminated and she is permanently ineligible for rehire or reemployment by PIAG. Murphy waives any right, if any, to seek or obtain employment or reemployment with PIAG. Murphy agrees never to seek employment or otherwise seek to be hired, rehired, and employed, reemployed, or reinstated by PIAG at any time at any location under any theory. In the event Murphy inadvertently applies for employment with PIAG, upon notification, Murphy will voluntarily withdraw her application within three days of notice. In the event Murphy does apply for employment with PIAG and is hired, PIAG may immediately terminate Murphy's employment based on this Paragraph and Murphy further releases and waives any and all claims she may have in any forum against PIAG for reemployment or reinstatement under any theory or doctrine.

7. **Confidentiality.** Murphy shall not disclose any information regarding the underlying facts leading up to or the existence or substance of this Agreement, except to her spouse, tax advisor, and an attorney with whom she chooses to consult regarding her consideration of this Agreement. If inquiries arise concerning the Agreement, Murphy may only reply that "the Lawsuit is over," and shall make no other comment. Murphy acknowledges that confidentiality is a material term of this Agreement, and that if PIAG can prove in a court of law that she violated the confidentiality provision of this Agreement, she shall be responsible for PIAG's attorneys' fees and costs, in addition to any other damages which may be awarded.

PIAG shall instruct its employees that they are not to discuss Murphy's employment or the Lawsuit, and may respond to any inquiries regarding the Lawsuit by stating only that the "Lawsuit is over." Notwithstanding the foregoing, however, this confidentiality clause does not apply to any communication between PIAG and its Board of Directors.

The Parties agree to file a Joint Motion for Approval of Settlement and Dismissal of Action. Notwithstanding this filing, Murphy understands and agrees to be bound by the confidentiality provisions set forth herein and will not refer any person or entity to the public record of this action.

8. **Murphy's Employment Records.** Upon request from Murphy's prospective employers, PIAG shall provide only confirmation of Murphy's last position held, dates of employment, and salary information.

9. **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

10. **No Admission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

11. **Amendment**. This Agreement may not be modified, altered, or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

12. **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Murphy acknowledges that she has not relied on any representations, promises, or agreements of any kind made to her in connection with her decision to accept this Agreement, except for those

set forth in this Agreement.

MURPHY ACKNOWLEDGES THAT SHE HAS CONSULTED WITH AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT. MURPHY FURTHER ACKNOWLEDGES THAT SHE HAS HAD A REASONABLE OPPORTUNITY TO REVIEW AND CONSIDER THIS AGREEMENT. MURPHY, FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS SHE HAS OR MAY HAVE AGAINST RELEASEES.

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

By: *(signature)*
EARNESTINE MURPHY
Date: 3/19/15

PRINTING & IMAGING ASSOCIATION OF GEORGIA, INC.
By: *(signature)*
RANDOLPH CAMP
PRESIDENT
Date: 03/25/15